IVAN BOYD,

        Plaintiff,

      v.                                  Case No. 20-C-1285

CHRISTINE A. BURNETT, et al.,

        Defendants.

## SCREENING ORDER

    Plaintiff Ivan Boyd, who is currently serving a state prison sentence at Redgranite Correctional Institution (RGCI) and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Boyd's initial complaint was screened and dismissed for failure to state a claim. Dkt. No. 9. Boyd was allowed to proceed *in forma pauperis* and given leave to amend his complaint. He has done so, and the court will now screen his amended complaint. The standards for screening a complaint were set forth in the court's earlier order and will not be repeated here.

### ALLEGATIONS OF THE AMENDED COMPLAINT

    In general, Boyd alleges that the defendants named in his complaint violated his rights under the Eighth Amendment of the United States Constitution and laws of the State of Wisconsin by denying him adequate medical care. Named as defendants are Christine A. Burnett, a nurse practitioner at RGCI, and Sara Miller and Lyla M. Hansen, both registered nurses at RGCI.

    Boyd alleges that Nurse Practitioner Burnett subjected him to cruel and unusual punishment by failing to refer him for an orthopedic examination for problems he was having with

his shoulder following a flu shot, refusing to sign an affidavit so he could be released from prison due to his chronic health conditions, failing to start him on insulin for his diabetes earlier, and failing to provide him a new hose for his CPAP machine in a timely manner. Boyd also states that he "genuinely believes that Burnett's actions were retaliatory." Am. Compl., Dkt. No. 10 at 11. Boyd alleges Nurse Miller subjected him to cruel and unusual punishment by failing to provide him a new hose for his CPAP machine despite his repeated requests from May 29, 2020 to June 10, 2020, when he suffered a "major sleep event." Finally, Boyd alleges that Nurse Hansen violated his rights when she failed to examine him and provide treatment after he struck his head in the early morning hours of June 10, 2020, as a result of his major sleep event, and instead simply provided him a new hose for his CPAP machine. Alternatively, he alleges that their actions were negligent and failed to comply with the proper standard of care.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The federal claims Boyd asserts are for cruel and unusual punishment in violation of the Eighth Amendment and retaliation in violation of the First Amendment. State prisoners have an Eighth Amendment right to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must establish (1) an objectively serious medical condition, to which (2) a state official was deliberately, that is subjectively, indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). To prevail on a First

2

Amendment retaliation claim, a plaintiff must ultimately show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). These are the general principles that must be applied to Boyd's claims against each defendant.

## A. Christine Burnett

### 1. Deliberate Indifference

Boyd claims that Burnett's treatment of his diabetes and shoulder pain, including her refusal to schedule an offsite orthopedic consultation, were not based on sound medical judgment and constituted deliberate indifference. With respect to medical care in prisons, decisions made by practitioners to grant or deny care are typically matters reserved for medical judgment and do not by themselves represent cruel and unusual punishment. *See Estelle*, 429 U.S. at 107. "[D]isagreement with a doctor's medical judgment is not enough to prove deliberate indifference." *Petties v. Carter*, 795 F.3d 688, 691 (7th Cir. 2015). "[P]hysicians are entitled to deference in treatment decisions 'unless no minimally competent professional would have so responded under similar circumstances.'" *Johnson v. Loftin*, 464 F. App'x 530, 532 (7th Cir. 2012) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)).

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence *deliberate indifference* to serious medical needs.

*Estelle*, 429 U.S. at 105–06.

3

Case 1:20-cv-01285-WCG   Filed 12/15/20   Page 3 of 11   Document 11

Here, contrary to his claim of deliberate indifference, Boyd shows that Burnett was responsive to both his diabetes and his shoulder-related complaints. With respect to his diabetes, she initially deferred to his wishes not to go on insulin, and instead prescribed oral medication. Although he later changed his mind and requested insulin, Boyd does not get to dictate his medical treatment at will. The court construes facts in Boyd's favor, but also grants deference to Burnett's decisions. Boyd's facts show that his glucose levels were high, and he alleges that he felt unwell prior to requesting the change, but he provides no evidence that Burnett's decision to wait a few weeks to switch treatment was unsound. She explained to him that she was concerned about the risk of moving to injectables during a pandemic and that she wanted him to attempt to control his glucose levels on his own before moving to insulin. Neither explanation shows a disregard for his health. Even if Burnett had been negligent in delaying the start of insulin, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106. Boyd was still on oral medications, so he was not without treatment during the delay; he was only dissatisfied that Burnett did not provide the treatment he wanted at the time he wanted it. That dissatisfaction does not state a constitutional claim.

With respect to his shoulder, Boyd has again failed to allege facts suggesting that Burnett was deliberately indifferent. She referred him for physical therapy, hardly something she would have done if she was indifferent to his medical care. "[A]lthough not following the advice of a specialist may constitute deliberate indifference, whether a doctor is deliberately indifferent depends on the totality of the inmate's care." *Petties*, 795 F.3d at 692 (internal citations omitted). By his own telling, Burnett saw Boyd regularly, and sometimes weekly or more, for his various ailments including his shoulder. Burnett consulted with a neurologist, who declined to accept a

consultation and, as noted, she referred Boyd for regular physical therapy for his shoulder. Boyd highlights an encounter where she ignored his complaints about his shoulder in order to focus on his leg as an example of her indifference, but his own facts in that instance undercut his complaint. His amended complaint separates his description of her allegedly dismissive treatment on that date from the fact that he was admitted to the ER for treatment of his leg the same day in order to emphasize her indifference to his shoulder, but when taken together, the facts show that she was appropriately focused on his leg infection and far from indifferent. Boyd has included nothing to support the claim that her unwillingness to refer him to an outside specialist at his request was an omission sufficiently harmful to constitute deliberate indifference. Finally, the fact that she did not support his release for medical reasons is clearly a matter of judgment and does not show deliberate indifference or state a constitutional claim.

**2. Retaliation**

Boyd also alleges that he "genuinely believes that Burnett's actions were retaliatory when she refused to refer Boyd to see an Orthopedic surgeon; sign extraordinary health affidavit, start Boyd on insulin earlier, and provide him with a CPAP hose in a timely matter—all because of the fact Boyd has complained about her and also has written institution grievances against her and her co-workers." Am. Compl. ¶ 32. The fact that Boyd "genuinely believes" the Burnett retaliated against him is not enough to state a claim, however. The court is not required to accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To establish a prima facie case of retaliation, an inmate must produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendant['s] actions." *Antoine v. Ramos*, 497 F. App'x 631, 633 (7th Cir. 2012). Boyd has failed to allege facts sufficient to

5

support such a claim. He does not allege when he filed a grievance against Burnett. Timing in a retaliation claim is crucial. Unless the protected conduct occurred prior to the alleged retaliation, no violation can be shown. Boyd fails to allege what the grievances were, when they were filed, or that Burnett was even aware of them.

Nor has he satisfied the second or third prongs required to show retaliation. None of the actions that Boyd has identified as evidence of retaliation by Burnett rise to the level of a deprivation. And Boyd includes no facts even hinting that if Burnett knew about Boyd's grievances about him (which he has not shown), her actions in any instance would have been different. As explained above, he has failed to allege facts sufficient to show that any of Burnett's treatment decisions were outside the bounds of normal medical judgment.

**B. Sara Miller and Lyla Hansen**

Boyd also asserts claims of deliberate indifference against Nurses Miller and Hansen. In order to state a claim of deliberate indifference, an inmate must first show that he either suffered from or was at risk of an objectively serious medical need. Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim, for clearly that is not the case." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). A serious medical need is one that has either been diagnosed by a doctor as requiring treatment or one that is obviously serious to even to a lay person. *Id*. (citing *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). After clearing that hurdle, the inmate must then show that the official acted with a "'sufficiently culpable state of mind'" in deliberately disregarding "an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Dye v. Lomen*, 40 F. App'x 993, 996 (7th Cir. 2002) (quoting *Farmer*, 511 U.S. at 834). "Conduct must be intentional or criminally reckless; even gross negligence is not enough. Intentionally interfering with a medical staff's

prescribed treatment in the face of a substantial risk to an inmate's health may constitute deliberate indifference." *West v. Millen*, 79 F. App'x 190, 194–95 (7th Cir. 2003) (internal citations omitted).

With respect to Sara Miller, the serious condition at issue was sleep apnea. Boyd argues that Miller's delay in providing him with a new CPAP hose exacerbated his sleep apnea symptoms, including his high blood pressure, and placed him at serious risk. Assuming without deciding that Boyd's sleep apnea qualifies as an objectively serious medical need, Boyd must show that Miller's delay in providing him with a new hose was more than negligent, that it was akin to criminal recklessness. Boyd states that his CPAP machine was prescribed by a doctor and that he told Miller during her daily wellness checks that he needed a new hose. He asserts that when confronted about it, she stated that he only told her once, but that he actually complained to her every day for nearly two weeks. These allegations are sufficient to state a claim for deliberate indifference against Miller. That claim will proceed.

Boyd has not, however, stated a claim against Hansen. His complaint against Hansen is essentially that she did not examine him after he complained that he hit his head and was dizzy and confused. Boyd implies that he received a concussion from hitting his head and Hansen should have taken it more seriously. But Boyd has identified no ill effects from bumping his head, and his speculation does not compel the court to infer a serious head injury from his temporary disorientation. Hansen responded promptly to his emergency 1:00 a.m. call and provided him a new hose for his CPAP machine. The fact that she did not do more at the time does not show deliberate indifference since Boyd has not alleged facts sufficient to show more was needed.

**C. State Law Claims**

Boyd also asserts "Wisconsin negligence" claims against all three defendants. An actionable negligence claim in Wisconsin requires four elements: "(1) a duty of care on the part of

7

the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of that injury." *Rockweit by Donahue v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). In medical cases, negligence involves the failure to conform to the accepted standard of reasonable care that a patient might expect in the same or similar circumstances. *See Dep't of Reg. & Licensing v. State Med. Exam. Bd.*, 215 Wis. 2d 188, 198–200, 572 N.W.2d 508 (Ct. App. 1997). To prove medical negligence, "the plaintiff must establish the standard of care, show that the defendant failed to conform to the standard of care, and prove that the defendant's failure to conform to the standard of care caused the plaintiff's injury." *Carney-Hayes v. Nw. Wis. Home Care, Inc.*, 2005 WI 118, ¶ 37, 284 Wis. 2d 56, 699 N.W.2d 524. Establishing the standard of reasonable care under specific circumstances typically requires expert testimony because the ordinary person does not have the specialized knowledge or experience to make such a determination on their own. *Nowatske v. Osterloh*, 198 Wis. 2d 419, 437 n.10, 543 N.W.2d 265 (1996).

Boyd has stated no constitutional or other federal law claims against either Christine Burnett or Lyla Hansen. Therefore, the court declines to take up state law negligence claims against the two and they are dismissed without prejudice. He is free to take up those claims in state court. In regard to Sara Miller, while it is certain that Miller had a duty of care to Boyd, Boyd would still need to show that she breached that duty of care and that he suffered actual loss or damage due to that breach. However, because the court infers possible harm on Boyd's deliberate indifference claim against Miller, the court will also, for now, allow him to proceed on a negligence claim against her.

**D. Request for Counsel**

Boyd's requested relief also includes a request for counsel. Civil litigants do not have a constitutional or statutory right to have an attorney represent them. *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) ("We begin with the fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court."). District courts have the discretion to recruit counsel for individuals unable to afford counsel in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)).

Boyd has not demonstrated any effort to obtain counsel on his own. He also appears to be competent to litigate the matter on his own at this point. Indeed, Boyd has shown an ability to litigate claims of deliberate indifference through summary judgment in a case that raised similar issues. *See Boyd v. Corbett*, No. 17-cv-944, 2019 WL 7290563 (W.D. Wis. Dec. 30, 2019). Therefore, his request for counsel will be denied. The denial is without prejudice, however, and Boyd may ask the court at a later stage in the litigation to consider appointing counsel.

In summary, the court finds that Boyd has not stated a claim against Christine Burnett or Lyla Hansen, but the court will allow Boyd to proceed on claims of deliberate indifference and negligence against Sara Miller.

**IT IS THEREFORE ORDERED** that Burnett and Hansen are hereby **DISMISSED** as defendants in this action.

**IT IS FURTHER ORDERED** that Boyd's request to appoint counsel is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Boyd's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the Defendant Miller.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Defendant Miller shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

10

Case 1:20-cv-01285-WCG    Filed 12/15/20    Page 10 of 11    Document 11

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Boyd is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Dated at Green Bay, Wisconsin this 15th day of December, 2020.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge